

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| FRAN GREEN, ET AL. | CIVIL ACTION NO. 12-2772 |
| versus | JUDGE TOM STAGG |
| ROBERT ENTREKIN, ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendants Robert Entrekin ("Officer Entrekin") and Scott Deen ("Officer Deen") (collectively "the defendants"), seeking judgment as a matter of law and dismissal of all of the claims asserted against them by plaintiffs Fran Green ("Green") and Linda Catanese ("Catanese") (collectively "the plaintiffs"). See Record Document 23. For the reasons set forth below, the defendants' motion is **GRANTED.**

# I.  BACKGROUND

This lawsuit arises from an incident that occurred on October 29, 2011.[1]  The

parties agree that Officer Entrekin was directing traffic at the Interstate 20 exit to

Jewella Avenue.  See Record Document 23, Statement of Material Facts at ¶¶ 1-3.[2]

Officer Entrekin was there to prevent vehicles from turning right onto Jewella

Avenue to allow traffic leaving the fairgrounds to exit onto Interstate 20.  See id.,

Statement of Material Facts at ¶ 2.  The defendants allege that Officer Entrekin was

"fully dressed in his Shreveport Police Department uniform" and "wearing his bright

green reflective vest."  Id., Statement of Material Facts at ¶ 3.  The plaintiffs contend

that the reflective vest concealed Officer Entrekin's badge, name tag, and uniform,

and that there was nothing visible to show that he was a police officer.  See Record

Document 25, Response to Defendants' Statement of Facts at ¶¶ 1-3.  Additionally,

the plaintiffs claim that Officer Entrekin was blocking one lane of traffic with his

---

[1] The plaintiffs' opposition memorandum to the instant motion, and
statement of facts in support, both state the date of the incident as October 1, 2011.
See Record Document 25.  However, the plaintiffs' complaint states that the date
of the incident was October 29, 2011.  See Record Document 1.  The parties do
not appear to dispute that the date of the incident was October 29, 2011.

[2] Although the plaintiffs contest certain portions of the defendants' alleged
facts, they do not contest the facts stated above.  See Record Document 25,
Response to Defendants' Statement of Facts at ¶¶ 1-3.  Therefore, for purposes of
deciding the instant motion, these facts are deemed admitted.  See Local Rule
56.2.

personal vehicle.  See id., Statement of Material Facts at ¶¶ 6, 9.

The defendants claim that Green exited the interstate, approached Officer Entrekin in her vehicle, and told him that she needed to turn right onto Jewella Avenue to get to her house.  See Record Document 23, Statement of Material Facts at ¶ 5.  The defendants state that Officer Entrekin told Green that she could not turn right and must turn left.  See id.  The plaintiffs allege that Officer Entrekin did not identify himself as a police officer, that Green showed her driver's license to him to show her address, and that he said "I don't give a damn.  I don't care, go that way," and ordered Green to turn left.  See Record Document 25, Statement of Material Facts at ¶¶ 9, 12-13.  The parties agree that Green told Officer Entrekin she had to go home and proceeded to turn right on Jewella despite Officer Entrekin's instruction.  See Record Document 23, Statement of Material Facts at ¶ 5; Record Document 25, Statement of Material Facts at ¶ 14.  Green claims that, at the time she turned right, she was not aware that Officer Entrekin was a police officer.  See Record Document 25, Statement of Material Facts at ¶ 15.  Officer Entrekin allegedly radioed other officers to stop the vehicle at the next intersection but they were unable to do so because Green turned right across a parking lot before reaching the intersection.  See Record Document 23, Statement of Material Facts at ¶¶ 5-6.  The plaintiffs admit that Green turned across a parking lot but claim that no other officers attempted to

3

stop her. See Record Document 25, Response to Defendants' Statement of Facts at ¶¶ 5-6.

The plaintiffs contend that, once Green realized that Officer Entrekin may have been a police officer, she contacted her husband, a 911 dispatcher, and that he advised her to obtain Officer Entrekin's name and badge number as well as the license plate of his vehicle so that she could file a complaint regarding his use of a personal vehicle for official duties and alleged use of language toward her. See id., Statement of Material Facts at ¶¶ 18-20. Green drove to a Valero gas station on Jewella Avenue located near the Interstate 20 exit, bringing along her mother, Catanese, to sit with Green's children in the vehicle while Green obtained the information she wanted about Officer Entrekin. See id., Statement of Material Facts at ¶¶ 20-21. The parties agree that Green exited the vehicle and walked toward where Officer Entrekin was while Catanese stayed in the vehicle. See id., Statement of Material Facts at ¶ 21; Record Document 23, Statement of Material Facts at ¶ 7.

As Green was writing down the license plate number of Officer Entrekin's vehicle, he informed her that the truck was his. Green asked for his name and badge number, and Officer Entrekin told her his name and badge number twice. See Record

4

Document 23, Statement of Material Facts at ¶ 8.[3]  The plaintiffs argue that, while

Green was writing down the license plate number, Officer Entrekin yelled at her to

not write down anything about his truck. See Record Document 25, Statement of

Material Facts at ¶ 22.  There is no dispute that, once Officer Entrekin was able to

identify Green as the woman who turned right against his instructions, he told her to

stay put and that he was going to arrest her. See id., Statement of Material Facts at

¶¶ 25-26; Record Document 23, Statement of Material Facts at ¶ 9.

As Officer Entrekin approached Green, she began walking and then running

back toward her vehicle. See Record Document 23, Statement of Material Facts at

¶ 10.[4]  Catanese saw Green running and exited the vehicle and went to her.  The

defendants claim that Officer Entrekin and Catanese made contact with Green at

approximately the same time while the plaintiffs allege that Catanese had already

reached Green when Officer Entrekin charged into them.  See id., Statement of

Material Facts at ¶ 11; Record Document 25, Statement of Material Facts at ¶ 30. The

plaintiffs contend that Officer Entrekin bear-hugged them both, spun them around,

---

[3] The plaintiffs do not dispute these facts. See Record Document 25,
Response to Defendants' Statement of Facts at ¶ 8. Therefore, they are deemed
admitted for purposes of the instant motion. See Local Rule 56.2.

[4] The plaintiffs do not dispute these facts. See Record Document 25,
Response to Defendants' Statement of Facts at ¶ 10. Therefore, they are deemed
admitted for purposes of the instant motion. See Local Rule 56.2.

and took them to the ground, slamming Green's head on the ground and putting his knee in her back. See Record Document 25, Statement of Material Facts at ¶¶ 30-31. The defendants argue that the three of them moved in a circle as Officer Entrekin attempted to arrest Green, that Catanese was holding onto and pulling at both Green and Officer Entrekin, and that he had to trip them to bring them to the ground. See Record Document 23, Statement of Material Facts at ¶ 12.

The defendants further allege that Green was non-compliant and Catanese was on Officer Entrekin's back and pulling at him. See id., Statement of Material Facts at ¶¶ 12-13. They also claim that Officer Deen, who was flagging traffic nearby, responded in his patrol car and removed Catanese from Officer Entrekin's back. See id., Statement of Material Facts at ¶¶ 13, 15. The plaintiffs argue that Catanese never jumped on Officer Entrekin's back, that any contact she had with him was involuntary, and that security video from the gas station contradicts the defendants' version of events. See Record Document 25, Statement of Material Facts at ¶¶ 33-38.[5]

The plaintiffs contend that, after Officer Entrekin had handcuffed Green and pulled her to her feet, she complained that the handcuffs were too tight, and that he

---

[5] A video was attached as an exhibit to the plaintiffs' opposition. See Record Document 25, Ex. F.

6

responded "Are they?" and tightened the handcuffs even more. See id., Statement of Material Facts at ¶ 32. The defendants allege that another member of the Shreveport Police Department ("SPD") examined Green's handcuffs and determined they were within SPD policy guidelines. See Record Document 23, Statement of Material Facts at ¶ 17. Catanese was never handcuffed. See id., Statement of Material Facts at ¶ 20.[6] Green was issued a summons for violating Shreveport Ordinance 90-62[7] and Louisiana Revised Statute section 14:108.[8] Catanese was issued a summons for

---

[6] The plaintiffs do not dispute this fact. See Record Document 25, Response to Defendants' Statement of Facts at ¶ 20. Therefore, it is deemed admitted for purposes of the instant motion. See Local Rule 56.2.

[7] Shreveport Ordinance 90-62 provides:

> The driver of any vehicle shall obey the instructions of any traffic-control device applicable thereto placed in accordance with this chapter and other traffic ordinances of the city, **unless otherwise directed by a police officer,** subject to the exceptions granted to the driver of an authorized emergency vehicle in section 90-10.

City of Shreveport, Code of Ordinances § 90-62 (1993) (emphasis added).

[8] This statute provides in pertinent part as follows:

> Resisting an officer is the intentional interference with, **opposition or resistance to,** or obstruction **of an individual acting in his official capacity and authorized by law to make a lawful arrest** . . . when the offender knows or has reason to know that the person arresting . . . is acting in his official capacity.

La. Rev. Stat. § 14:108(A) (emphasis added).

7

violating Louisiana Revised Statute section 14:34.2.[9]  See id., Statement of Material

Facts at ¶ 18.[10]  They both were found not guilty on these charges at trial.  See Record

Document 25, Statement of Material Facts at ¶ 40, Ex. C; Record Document 30.[11]

The plaintiffs filed the instant lawsuit in this court on October 26, 2012.  In

their complaint, they allege claims against Officer Entrekin under 42 U.S.C. § 1983

("Section 1983") for violating Green's right to free speech per the First Amendment

and the Louisiana Constitution, claims against both Officer Entrekin and Officer

Deen under Section 1983 for violating both Green's and Catanese's rights to be free

from unlawful arrests per the Fourth Amendment and the Louisiana Constitution,

claims against both defendants for excessive use of force, and claims against both

---

[9] This statute provides in pertinent part as follows:

> Battery of a police officer is a battery committed without the consent of
> the victim when the offender has reasonable grounds to believe the
> victim is a police officer acting in the performance of his duty.

La. Rev. Stat. § 14:34.2(A)(1).

[10] The plaintiffs do not dispute these facts.  See Record Document 25,
Response to Defendants' Statement of Facts at ¶ 18.  Therefore, they are deemed
admitted for purposes of the instant motion.  See Local Rule 56.2.

[11] The plaintiffs have attached excerpts of the criminal bench trial transcript
to their opposition to the instant motion.  See Record Document 25, Ex. C; Record
Document 30.

defendants for battery[12] under Louisiana Civil Code article 2315.  See Record Document 1 at ¶¶ 1, 11, 14-25.[13]  The case was stayed until September 2013 during the adjudication of the criminal charges against the plaintiffs.  See Record Documents 10 and 14.  The defendants filed the instant motion, seeking judgment as a matter of law in their favor and dismissal of all of the plaintiffs' claims against them, primarily on the ground that both defendants are entitled to qualified immunity.  See Record Document 23.  The plaintiffs have opposed the motion, and the defendants filed a reply brief.  See Record Documents 25 and 26.

## II.  LAW AND ANALYSIS

**A.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

---

[12] The plaintiffs allege that Officer Entrekin committed battery against both Green and Catanese while Officer Deen is only alleged to have committed battery against Green.  See Record Document 1 at ¶¶ 21, 24.

[13] The State Fair Of Louisiana was also named as a defendant but was voluntarily dismissed by the plaintiffs.  See Record Documents 1 and 18.

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Section 1983 Claims And Qualified Immunity.**

To state a claim under Section 1983, the plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. See Lefall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994). The defendants argue that they are entitled to qualified immunity. Qualified immunity

10

shields government officials from liability in their performance of discretionary functions, unless their conduct violated a clearly established constitutional right. See Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009). "Once raised, a plaintiff has the burden to rebut the qualified immunity defense . . . . We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005).

The qualified immunity defense presents a two-part inquiry: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." Ontiveros, 564 F.3d at 382. The court may address either part of the two-part inquiry first. See Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009). The alleged violations of the plaintiffs' federal and state[14] constitutional rights are that Officer Entrekin violated Green's right to free speech by attempting to prevent her from filing a complaint against him, that both Officer Entrekin and Officer Dean violated both plaintiffs' rights to be free from unlawful arrests, and that

---

[14] Louisiana applies the same qualified immunity analysis to state constitutional law claims that are applied to qualified immunity under Section 1983. See Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005); Moresi v. Dep't of Wildlife & Fisheries, 567 So. 2d 1081, 1093 (La. 1990).

both defendants used excessive force against both plaintiffs.  The court will respectively examine each plaintiff's claims against Officer Entrekin and Officer Deen.

### 1.   Claims Against Officer Entrekin By Green.

#### a.   Unlawful Arrest.

Green alleges that Officer Entrekin violated her rights under the Fourth Amendment and the Louisiana Constitution to be free from unlawful arrest. "The right to be free from arrest without probable cause is a clearly established constitutional right." Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). Probable cause exists if, at the time of the arrest, a police officer had knowledge that would lead a reasonable person to believe that a crime was being or had been committed. See id. However, a lack of probable cause does not necessarily give rise to a claim under Section 1983.  Police officers who "'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." See Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000)(quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991)).

The defendants argue that Officer Entrekin's arrest of Green was based on probable cause that she violated both Shreveport Ordinance 90-62 ("Ordinance 90-62"), when she turned right against his orders not to, and Louisiana Revised Statute

12

Section 14:108 ("Section 14:108"), when she resisted arrest by running away and being non-compliant with his attempts to restrain her. See Record Document 23. The plaintiffs contend that there was no probable cause to arrest Green for violating Ordinance 90-62 because she did not know that Officer Entrekin was a police officer when she disobeyed his instructions. Moreover, the plaintiffs allege that, because Officer Entrekin had no legitimate basis to arrest Green, she was resisting an **unlawful** arrest and therefore did not violate Section 14:108. See Record Document 25.

In support of her argument, Green cites to Rogers v. Carter, 133 F.3d 1114 (8th Cir. 1998) for the proposition that probable cause does not exist when the fact that a person is a police officer is not apparent. In Rogers, the plaintiff argued with an apartment complex manager about the volume of music that he was playing in his sister's apartment. The manager's husband, a police officer, went to the apartment to talk to the plaintiff. He was in plain clothes and verbally identified himself as a police officer, but did not produce any identification or indicia of authority when requested by the plaintiff. After the plaintiff slammed the officer to the ground, the officer arrested him at gunpoint. See Rogers, 133 F.3d at 1116. The Eighth Circuit reversed the district court's granting of summary judgment on the plaintiff's false arrest claim, in part, because the officer was dressed in plain clothes and "did nothing

more than declare himself a police officer," finding the plaintiff had no reason to know that he was actually a police officer. Id. at 1118.

The court initially notes that Rogers is an Eighth Circuit case and therefore not binding authority on this court. Additionally, the facts of the instant case are distinguishable. The officer in Rogers was in plain clothes and confronted the plaintiff in an apartment complex. See id. at 1116. Officer Entrekin was in his full police uniform. The plaintiffs contest this fact, stating that the reflective vest that he was wearing concealed his badge and name tag. See Record Document 25, Response to Defendants Statement of Facts at ¶ 3. However, photographs submitted by the defendants show that the reflective vest did not cover the sleeves on Officer Entrekin's uniform, both of which have SPD insignias. See Record Document 26, Ex. 17. Additionally, Green encountered Officer Entrekin directing traffic at the intersection of a major highway and an interstate near the location of the state fair.

The court finds that, under the circumstances, it was reasonable for Officer Entrekin to conclude that Green knew he was a police officer, even assuming that she truthfully did not know that he was. Consequently, when Green ignored his orders to not turn right, Officer Entrekin could reasonably conclude that probable cause existed to arrest Green for violating Ordinance 90-62. Additionally, when he later told her to stay put because he was going to arrest her for ignoring his orders and she

ran away from him, he could reasonably conclude there was probable cause to arrest her for resisting a lawful arrest in violation of Section 14:108. Because Officer Entrekin could reasonably conclude that probable cause existed to arrest Green for both offenses, he is entitled to qualified immunity as to these arrests. Therefore, the defendants' motion is **GRANTED** as to Green's unlawful arrest claim against Officer Entrekin.

### b.    First Amendment Rights.

Closely connected to Green's claim for unlawful arrest is that Officer Entrekin violated her First Amendment rights to free speech because his arrest was motivated by the fact that Green told him she intended to file a complaint against him. To prevail on this type of claim, plaintiffs must show that "(1) they were engaged in constitutionally protected activity; (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." Izen v. Catalina, 398 F.3d 363, 367 (5th Cir. 2005). Additionally, a plaintiff's First Amendment claim will fail if the officer had probable cause to make the arrest. See Russell v. Altom, 546 F. App'x 432, 436 (5th Cir. 2013); Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008).

As discussed above, Officer Entrekin had probable cause to arrest Green for violating both Ordinance 90-62 and Section 14:108. It was not unreasonable for him to think that Green was aware he was a police officer when she disobeyed his instructions to not turn right. Moreover, Green has failed to show that her arrest was "substantially motivated" by her protected activity of gathering information to file a complaint against Officer Entrekin. It is undisputed that Officer Entrekin did not recognize Green as the person who disobeyed his instructions until after he gave her the information she requested. See Record Document 23, Statement of Material Facts at ¶¶ 8-9; Record Document 25, Response to Defendants' Statement of Facts at ¶¶ 8-9. When Green did not deny the accusation, Officer Entrekin told her he was going to arrest her. See Record Document 23, Statement of Material Facts at ¶ 9; Record Document 25, Response to Defendants' Statement of Facts at ¶ 9. The plaintiffs do not allege that Officer Entrekin attempted to arrest Green while she was obtaining his license plate number, name, or badge number. See Record Documents 1 and 25. Thus, the court finds that Green's arrest was not substantially motivated by her protected speech, but rather by Officer Entrekin's reasonable conclusion that she violated Ordinance 90-62. Therefore, the defendants' motion is **GRANTED** as to Green's First Amendment claim against Officer Entrekin.

16

### c.   Excessive Force.

Green's final claim against Officer Entrekin is that he used excessive force both when arresting her and post-arrest.  An excessive force claim requires the plaintiff prove that he was injured, the injury was directly and solely caused by the use of clearly excessive force, and the excessiveness of the force was not objectively reasonable.  See Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005).  The alleged injury must be "more than de minimis."  Id. at 752.  When determining whether the force used was objectively reasonable, the court should consider the particular facts and circumstances of the case, including the seriousness of the crime, whether the suspect posed an immediate threat to anyone's safety, and whether the suspect actively resisted arrest or attempted to flee and evade arrest.  See id. at 753.

The defendants allege that the force used by Officer Entrekin was reasonable, and thus not excessive, because Green attempted to avoid arrest by running away, and by actively resisted his attempts to restrain her.  Furthermore, the defendants pointed out that Officer Entrekin had no knowledge of whether Green was armed.  Additionally, Officer Entrekin argues that Green's injuries were merely de minimis, specifically "minor bruising, soreness, and a small abrasion."  Record Document 23, Memorandum In Support at 14.  Green's only argument as to the force used to arrest her is that the underlying arrest was unlawful, and therefore all force was excessive.

Having found that Officer Entrekin had probable cause to arrest Green, and based on her attempted evasion and active resistance, the force used to arrest Green was objectively reasonable and therefore not excessive.

As for Green's post-arrest force claim, Green argues that Officer Entrekin intentionally tightened her handcuffs after she claimed they were already too tight. However, the Fifth Circuit has held that "handcuffing too tightly, without more, does not amount to excessive force." Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001). Green does not contest the fact that another officer examined her handcuffs afterward and found them to be within SPD policy. See Record Document 25, Response to Defendants' Statement of Facts at ¶ 17. The court finds that the plaintiff has not shown that Officer Entrekin is not entitled to qualified immunity. Therefore, the defendants' motion is **GRANTED** as to Green's excessive force claim against Officer Entrekin.

### 2.    Claims Asserted Against Officer Entrekin By Catanese.

#### a.    Unlawful Arrest.

The plaintiffs allege that Catanese's arrest for battery[15] of a police officer, a violation of Louisiana Revised Statute section 14:34.2 ("Section 14:34.2"), was

---

[15] "Battery is the intentional use of force or violence upon the person of another . . . ." La. Rev. Stat. § 14:33.

18

unlawful, primarily arguing that the version of events asserted by the defendants is contradicted by a video recording of the incident. Specifically, the plaintiffs argue that Catanese never jumped on Officer Entrekin's back when he was attempting to arrest Green. The video submitted by the plaintiffs is of low quality and skips multiple intervals of time during the incident. <u>See</u> Record Document 25, Ex. F. However, on the video it appears that Catanese physically interacts with Officer Entrekin both while standing and after she and Green had been taken down to the ground. <u>See id.</u>, Ex. F. Additionally, even assuming that Catanese never jumped on Officer Entrekin's back, the defendants have submitted affidavits from two police officers who witnessed the incident and stated that Catanese was pulling on Officer Entrekin as he was attempting to arrest Green. <u>See</u> Record Document 23, Ex. 2 at ¶¶ 6-7, Ex. 5 at ¶ 4. Catanese has even admitted that she made contact with Officer Entrekin. <u>See</u> Record Document 23, Ex. 13 at 2, 4. There was a reasonable basis for Officer Entrekin to conclude he had probable cause to arrest Catanese. Therefore, the defendants' motion is **GRANTED** as to Catanese's claim for unlawful arrest against Officer Entrekin.

### b.   Excessive Force.

The plaintiffs contend that Officer Entrekin used excessive force against Catanese. However, it is undisputed that Catanese was running toward Green, who

was actively evading Officer Entrekin's attempt to arrest her.  Additionally, Catanese

testified in her deposition that she grabbed onto Green as Officer Entrekin made

contact with them.  <u>See</u> Record Document 23, Ex. 13 at 2, 4.  The force used that

Officer Entrekin used to bring the two women to the ground was therefore reasonable

as an attempt to gain control and for his own safety as he was attempting to arrest

Green while Catanese was holding onto her.  Catanese also does not contest the

defendants' allegation that her injuries were minor.  <u>See</u> Record Document 25,

Response to Defendants Statement of Facts at ¶ 20.  Because the force used was

reasonable and her injuries were <u>de</u> <u>minimis</u>, the defendants' motion is **GRANTED**

as to Catanese's claim for excessive force against Officer Entrekin.

### 3.   Claims Against Officer Deen By Green.

#### a.   Unlawful Arrest And Excessive Force.

In their complaint, the plaintiffs allege causes of action by Green against

Officer Deen for both unlawful arrest and excessive force.  However, the plaintiffs

raised no arguments regarding these claims in their opposition to the instant motion.

<u>See</u> Record Document 25.  "[A]n issue raised in the complaint but ignored at

summary judgment may be deemed waived."  <u>See</u> <u>Keenan v. Tejeda</u>, 290 F.3d 252,

262 (5th Cir. 2002); <u>G&H Development, LLC v. Penwell</u>, No. 13-0272, 2014 WL

1248241 at *4 (W.D. La. Mar. 26, 2014).  Therefore, the defendants' motion is

**GRANTED** as to Green's claims against Officer Deen for both unlawful arrest and excessive force.

### 4.    Claims Asserted Against Officer Deen By Catanese.

#### a.    Unlawful Arrest.

The foundation of Catanese's claim for unlawful arrest by Officer Deen is identical to her claim for unlawful arrest against Officer Entrekin. Having already found that the defendants are entitled to judgment as a matter of law to the latter, it logically follows that they are entitled to judgment as to the former. There was a reasonable basis for Officer Deen to conclude that probable cause existed to arrest Catanese for violating Section 14:34.2. Therefore, the defendants' motion is **GRANTED** as to Catanese's claim against Officer Deen for unlawful arrest.

#### b.    Excessive Force.

Although Catanese does not assert a battery claim against Officer Deen, she nonetheless alleges that he used excessive force against her. In their opposition to the instant motion, though, the plaintiffs make no arguments regarding the allegedly excessive force used by Officer Deen against Catanese. This claim is thus considered waived. See Keenan, 290 F.3d at 262; Penwell, 2014 WL 1248241 at *4. Therefore, the defendants' motion is **GRANTED** as to Catanese's claim for excessive force against Officer Deen.

## C.    Battery Claims.

The plaintiffs also allege state law claims under Louisiana Civil Code article 2315 that Officer Entrekin committed a battery against both Green and Catanese, and that Officer Deen committed a battery against Green.   However, the plaintiffs' opposition contains only one paragraph relating to their battery claims, arguing that Officer Entrekin owed Green a duty to protect her from injury once she was in custody, and contending he breached that duty when he tightened her handcuffs.   See Record Document 25 at 10.   The plaintiffs do not address Catanese's battery claim against Officer Entrekin or Green's battery claim against Officer Deen. These claims are consequently waived.   See Keenan, 290 F.3d at 262; Penwell, 2014 WL 1248241 at *4.

As for Green's battery claim against Officer Entrekin, the court finds that the plaintiffs have not met their burden to create a genuine dispute of material fact. Having found that the force that Officer Entrekin used was reasonable and not excessive, Louisiana law precludes finding him liable for battery.   See Elphage v. Gautreaux, 969 F. Supp. 2d 493, 515 (5th Cir. 2013).   Therefore, the defendants' motion is **GRANTED** as to all of the plaintiffs' state law battery claims against the defendants.

22

## III.  CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is **GRANTED** and all of the plaintiffs' claims[16] are hereby **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 27th day of August, 2014.

_____
JUDGE TOM STAGG

---

[16] The court notes that the defendants' motion, in an abundance of caution, also addresses a potential Section 1983 claim against the City of Shreveport as well as defamation claims.  See Record Document 23.  The plaintiffs state in their opposition that they are not pursuing any claims against the City of Shreveport and also are not bringing any defamation claims.  See Record Document 25 at 10 n. 1.

23